**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **FEMI BOGLE ASSEGAI** | : | **3:02 CV 2292 (JCH)** |
| *Plaintiff,* | : | |
| **v.** | : | |
| | : | |
| **STATE OF CONNECTICUT** | : | |
| **COMMISSION ON HUMAN** | : | |
| **RIGHTS AND OPPORTUNITIES,** | : | |
| *and* **CYNTHIA WATTS ELDER** *in* | : | |
| *her official capacity as Executive* | : | |
| *Director, Connecticut Commission of:* | | |
| *Human Rights and Opportunities,* | : | |
| *(CHRO) and* **LEANNE APPLETON,** | : | |
| *in her individual Capacity and official* | : | |
| *capacity as Director Of Finance of* | : | |
| *CHRO; and* **DONALD NEWTON** *in* | : | |
| *his individual capacity and official* | : | |
| *capacity as CHRO Chief of Field* | : | |
| *Operations.* | : | **JANUARY 18, 2005** |
| *Defendants.* | | |

**PLAINTIFF'S MEMORANDUM  IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**STANDARD**

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions filed together with the affidavits,

if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." The Court must draw all reasonable inferences in the light most favorable to the party opposing the motion, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), mindful that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433 (3d Cir. 1996).

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution. R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from

which a reasonable inference could be drawn in favor of the opposing party, summary

judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531,

1535 (2d Cir. 1997). Citing, Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir.

1996).

## **ARGUMENT**

"[S]ummary judgment . . . is particularly inappropriate where the inferences which

the parties seek to have drawn deal with questions of motive, intent, and subjective

feelings and reactions." Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 111, 639 A.2d

507 (1994). "A question of intent raises an issue of material fact, which cannot be

decided on a motion for summary judgment." Picataggio v. Romeo, 36 Conn. App. 791,

794, 654 A.2d 382 (1995). When passing upon a motion for summary judgment, the

court may not resolve factual disputes or make credibility determinations, even if the case

is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation,

74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all

inferences against the moving party. Appleton v. Board of Education, 254 Conn. 205,

757 A.2d 1059 (2000); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d

Cir. 1991). The evidence of the party against whom summary judgment is sought must

be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must

construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor.  Appleton, supra; Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990).

## THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

A public officer may be shielded from liability in his individual capacity based on qualified immunity if his conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Shechter v. Comptroller of the City of New York, 79 F.3d 265, 268 (2d Cir.1996).  However, the Second Circuit has, as with other aspects of summary judgment, severely limited the ability of the trial courts to act. See, Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir.1994)

(holding that the immunity issue should be decided by the court only where the facts

concerning its availability are undisputed; otherwise, jury consideration is required), *cert.*

*denied,* 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995); <u>Frank v. Relin</u>, 1 F.3d

1317 (2d Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993);

<u>Warren v. Dwyer</u>, 906 F.2d 70, 74 (2d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 431,

112 L.Ed.2d 414 (1990).

In the case at hand, there are not only facts in dispute, but there is an abundance of

evidence corroborating the plaintiff's deposition testimony that the defendants violated

her protected employment rights. The defendants engaged in conduct that was

threatening and extremely harassing.

## <u>TIMELINESS</u>

The defendants argue that the statute began to run on March 29, 2001, when

Mrs. Bogle-Assegai was informed that she would be terminated. Mrs. Bogle-Assegai

suggests that the court should not use the date that the defendant indicates she "would" be

terminated; but rather the date that she was in fact terminated. Mrs. Bogle-Assegai was

effectively terminated April 12, 2001. Further, the question whether a court may, for

purposes of determining liability, review all such conduct, including those acts that occur

outside the filing period, turns on the statutory requirement that a charge be filed within a

certain number of days "after the alleged unlawful employment practice occurred." Because such a claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice," it does not matter that some of the component acts fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability.  National Railroad Passenger Corporation v. Morgan, *536 U.S. 101* (2002).

The defendants also claim that Mrs. Bogle-Assegai had a duty pursuant to 42 USC 2000e-5(f)(1) to include the Justice Department in her attempt to exhaust administrative remedies.  However, the text of the statute clearly places all duty with the Equal Employment Opportunity Commission.  The pertinent portion of 42 USC 2000e-5(f)(1) states:  "[T]he Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court."  Mrs. Bogle-Assegai must not be penalized for the failure of the Commission to refer the instant matter to the Justice Department.

## THE PLAINTIFF CAN PROVE RACE DISCRIMINATION

In this case, it appears that there was a practice of CHRO managers working a volume of unsanctioned hours in excess of the usual eight daily hours, but then merely reporting

the eight hours worked. (Exhibit 8) This was accomplished by coming in earlier in a workday and leaving later in the workday.  In those instances a supervisor would only expect eight (8) hours reported on an employee's time sheet. (Exhibit 8)

Watts Elder admits that there may have been a pattern or practice of working unsanctioned hours and then making up the time during the work week. (Exhibit 11). Although Watts Elder stated that such a practice was not encouraged; it appears that there was a degree of willful blindness on her part.  Hence, that practice continued to occur. (Exhibit 11).  As it related to managers, there was no check or balance of managerial time reporting, each time sheet was taken a face value.  Further, neither a review sheet nor a log-in sheet was necessary for managers because the "time sheet govern[ed]". (Exhibit 13).  Lastly, during the operative time of this controversy there was no practice of correlating time sheets and any other documents to cross reference employee time and attendance.  (Exhibit 14).

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) lays out the burden of production and order of proof analysis for Title VII causes of action and 42 U.S.C. § 1981 causes of action.  "To make out a prima facie case, the plaintiff must show that:  (i) she is a member of a protected class; (ii) she was qualified for the position; (iii) the defendant took adverse action against her; and (iv) the adverse action occurred under

circumstances giving rise to an inference of discrimination." Harper v. Metropolitan

District Commission, 134 F. Supp. 2d 479, 483 (D. Conn. 2001) (Covello, C.J.). Stated

another way, a plaintiff may make out a prima facie case "by showing that she is within a

protected group; that she is qualified for the position; that she was subject to an adverse

employment action . . . and that a similarly situated employee not in the relevant

protected group received better treatment." McGuinness v. Lincoln Hall, 263 F.3d 49, 53

(2d Cir. 2001). "Alternatively, the fourth prong of the prima facie case may be satisfied

if the plaintiff can demonstrate that the . . . adverse employment action occurred under

circumstances giving rise to an inference of discrimination on the basis of plaintiff's

membership in that class." Farias v. Instructional Systems, Inc., 259 F.3d 91, 98 (2d Cir.

2001).

In essence, "[t]o establish a prima facie case of disparate treatment, a plaintiff must

show, *inter alia*, that she was subjected to adverse employment action, under

circumstances giving rise to an inference of prohibited discrimination." Fitzgerald v.

Henderson, 251 F.3d 345, 356 (2d Cir. 2001). "In an employment discrimination case,

the plaintiff has the burden of 'proving by the preponderance of the evidence a prima

facie case of discrimination." Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d

Cir. 1994), quoting, Texas Department of Community Affairs v. Burdine, 450 U.S. 248,

252-53 (1981).  A plaintiff need not necessarily prove a prima facie case to prevail, however.  "For instance, if a plaintiff is able to produce direct evidence of discrimination, [s]he may prevail without proving all the elements of a prima facie case."  <u>Swierkiewicz v. Sorema N.A.</u>, 122 S. Ct. 992, 997 (2002).

There is no dispute concerning whether Mrs. Bogle-Assegais a member of a protected class and whether she was subjected to an adverse employment action.

As far back as 1997 when Mrs. Bogle-Assegai was appointed as a regional manager, she was under scrutiny.  The scrutiny was the result of being identified as a "Martin appointee" [appointed by a former Commissioner of CHRO, Louis Martin] and hence resented by many of her white counterparts at the Commission on Human Rights and Opportunities.  Mrs. Bogle-Assegai was a favored employee by Mr. Martin (Exhibit 3).

Some years later, and after receiving the position of Regional Manager within the Waterbury region, it became apparent to Mrs. Bogle-Assegai that the scrutiny that she was under was taking an aggressive twist.  She responded to her suspicions through memos written by her. (Exhibit 5).  The memos memorialized the fact that she felt scrutiny and deliberate harassment from her supervisor, Newton and from the Commissioner of CHRO, Watts-Elder.  During the administration under Ms. Watts-Elder

there was never any kind of theft of time investigation that involved any regional

manager that was directed by the Commissioner of the CHRO. (Exhibit 6).  Moreover as

it concerned Mrs. Bogle-Assegai and at all times prior to the present controversy; Mr.

Newton, the Chief of field operations indicated that he never doubted the accuracy nor

had any reason to doubt the accuracy of Mrs. Bogle-Assegai's reported time.( Exhibit 7).

While Mrs. Bogle-Assegai was employed at CHRO Newton was a not a manager

that exhibited an aggressive management style.  He was not in the habit of questioning

the accuracy or integrity of the regional managers.   Although he had the authority to do

so, Newton never exercised disciplinary action (Exhibit 34).   Hence, it is noteworthy that

Newton's allegation surfaced just prior to the plaintiff's 10th anniversary as a State

employee (Plaintiff's Affidavit).

Newton testified that he never had issues with time, attendance and time reporting

for any regional managers.  Employee time sheets were accepted at face value (Exhibit

35).   Newton never questioned time sheets from regional managers other than Mrs.

Bogle-Assegai (Exhibit 36).   Newton testified that he would only investigate a time

reporting issue if he thought a reported time was inaccurate (Exhibit 35).

Newton testified that he had no reason to doubt time reporting accuracy of other

managers (Exhibit 35).  Newton insists that he was not concerned with Mrs. Bogle-

Assegai's time sheet when he called the Waterbury Regional office for her on January 26, 2001 (Exhibit 27). Eventually, Mrs. Bogle-Assegai explained what time she reported to work on January 26, 2001; Mr. Newton did not believe her (Exhibit 25). It is against this backdrop that the defendants claim that Mrs. Bogle-Assegai engaged in employee misconduct by stealing state time.

The investigation proceeded as Mr. Newton contacted Ms. Watts-Elder and received the authority to do a full review of Mrs. Bogle-Assegai's entire swipe card history. (Exhibit 28). It is outrageous that Mr. Newton used one time sheet as an excuse to mount a full review of Mrs. Bogle-Assegai's work attendance history. Mr. Newton did not do a full review based upon independent empirical facts which suggested a complete time-reporting review was necessary. Rather, he performed a discretionary yet arbitrary and capricious review merely because he had the capability to do so. (Exhibit 29). No other employee in the agency was subject to such scrutiny. As the investigation proceeded Mr. Newton told Ms.Watts-Elder that the time discrepancy happened on more than one time sheet (Exhibit 18).

In the history of the use of electronic swipe card access by the CHRO only one person, Mrs. Assegai, has ever been scrutinized to the level of a day for day comparison of both garage presence and office presence. Further, in only the mater of Mrs. Bogle-

11

Assegai did termination occur.  While it is claimed that Newton may have gained swipe card information for central office employees subsequent to Mrs. Bogle-Assegai's situation; he did not analyze the central office swipe data against central office time sheets (Exhibit 30).  Moreover, no person was fired as the result of Newton's feigned review of those central office time records.

**Plaintiff can Make a Prima Facie Case under the Equal Protection Clause**

"[W]here a plaintiff seeks to make out her prima facie case by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that she shared sufficient employment characteristics with that comparator so that they could be considered similarly situated.  In Shumway v. United Parcel Service, Inc., 118 F.3d 60 (2d Cir. 1997)], the Court explained that such an employee 'must be similarly situated in all material respects' – not in all respects.  Id. at 64.  A plaintiff is not obligated to show disparate treatment of an identically situated employee.  To the contrary, Shumway holds that in those cases in which a plaintiff seeks to establish her minimal prima facie case by pointing to disparate treatment of a similarly situated employee, it is sufficient that the employee to whom the plaintiff points be similarly situated in all material respects.  In other words, where a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other

employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001). The McGuinness court added in a footnote, at p. 54: "[B]ecause a Title VII plaintiff may establish a prima facie case of discrimination in a number of different ways depending on the specific facts of a given case, Shumway does not require that a plaintiff always be able to show disparate treatment of an otherwise similarly situated employee as a necessary prerequisite to a prima facie case under Title VII."

Mrs. Bogle-Assegai points to Ms. Leanne Appleton as a comparative similarly situated employee. Mrs. Appleton was also a CHRO manager. Mrs. Appleton was never subjected to the same type of scrutiny to which Mrs. Assegai was subjected. Although Ms. Appleton was presumed to be working, she was never tracked nor scrutinized (Exhibit 31). Ms. Appleton was the only other manager whose activity could be monitored (Exhibit 32). When working outside the office Ms. Appleton could be contacted by either home phone or cell phone (Exhibit 39).

Yet, Mrs. Assegai unfairly endured an investigation surrounding her work attendance habits. Concerns about Mrs. Bogle-Assegai came to the attention of Ms. Watts-Elder from Don Newton (Exhibit 17). Ms. Watts-Elder testified that she directed

the actions of those investigating Mrs. Bogle-Assegai. (Exhibit 19).  In an attempt to down-play the appearance of a departmental investigation Ms. Watts-elder stated that she did not receive information from other office employees concerning Mrs. Bogle-Assegai. (Exhibit 20).  However, she did, in fact, receive information from other employees about Mrs. Bogle-Assegai.  Ms. Watts-Elder  received items of information  on different "occasion[s]" (Exhibit 21).  Employees raised concerns to Watts-Elder that they were angry (Exhibit 23).  Watts-Elder received information about Mrs. Bogle-Assegai from office employees (Exhibit 24).  Obviously, Mrs. Bogle-Assegai was being singled out.

Mrs. Bogle-Assegai may also be considered as a class of one since no other manager in the CHRO agency was scrutinized to the level that she was scrutinized.  In Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073 (2000), the Supreme Court articulated the well-established law applicable to equal protection claims.  "Our cases," the court held, "have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See, Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S. Ct. 190, 67 L. Ed. 340 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 109 S. CT. 633, 102 L. Ed. 2d 688 (1989).  In so doing, we have explained that '[t]he

purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" 120 S. Ct. at 1074-75. Citing, Sioux City Bridge Co., supra, at 445; Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 340, 352 (1918). The court expressly held that it is sufficient, to state an equal protection violation, that "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Olech at 563. The motivation of the perpetrator is irrelevant. Olech at 565, Jackson v. Burke, 256 F.3d 93, 97 (2d Cir. 2000) ("proof of subjective ill will is not an essential element of a 'class of one' equal protection claim").

"Before Olech, the Second Circuit permitted selective enforcement claims based on a 'class of one' if the plaintiff could 'show both (1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Russo v. City of Hartford, 184 F. Supp. 2d 169, 190 (D. Conn. 2002) (Hall, J.), citing Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).

"In <u>Harlen</u>, the Court of Appeals assumed without holding; that a plaintiff who establishes differential treatment could state an equal protection claim by showing 'either that there was no rational basis for the unequal treatment received, or that the [unequal treatment] was motivated by animus." <u>Id</u>. quoting <u>Harlen</u>, supra, at 500; <u>Barstow v. Shea</u>, 196 F. Supp. 2d 141, 148 (D. Conn. 2002) (Arterton, J.); <u>Oneto v. Town of Hamden</u>, 169 F. Supp. 2d 72, 80-81 (D. Conn. 2001) (Arterton, J.); <u>Giordano v. City of New York</u>, 274 F.3d 740, 751 (2d Cir. 2001).

"The Equal Protection Clause requires that the government treat all similarly situated people alike. <u>City of Cleburne v. Cleburne Living Ctr</u>., 473 U.S. 432, 439 (1985). Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, we have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials. E.g., <u>LeClair v. Saunders</u>, 627 F.2d 606, 608-10 (2d Cir. 1980). The Supreme Court affirmed the validity of such 'class of one' claims 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.' <u>Village of Willowbrook v. Olech</u>,

528 U.S. 562, 564 (2000) (per curiam)."  Harlen Associates v. Incorporated Village of

Mineola, 273 F.3d 494, 499 (2d Cir. 2001).

In the case at bar, the plaintiff has adequately alleged that she was treated

differently from other similarly situated employees.  The defendants suggest that in order

to make out a claim for equal protection the plaintiff must prove that she is similar to a

"white non-muslim CHRO manager who submitted inaccurate time records and was

NOT disciplined.  On the contrary, the plaintiff must prove that she is similar to a white

non-muslim CHRO manager whose time records did not correspond to the computerized

swipe card records and was not fired.  Newton indicated that if someone was "mistaken"

he would change the reported time to some type of leave (Exhibit 38).  There is no doubt

that other CHRO employees submitted inaccurate time sheets.  Moreover, Watts-Elder

and Newton knew about those managers and those managers were not fired.  Ms. Watts-

Elder indicated that when necessary she would use progressive discipline rather than

termination (Exhibit 33).

At the summary judgment stage, the Court should not make any finding as to

whether [the defendants'] reason was, in fact, false. Rather, the Court must determine

whether, after casting all of the facts of the case in the light most favorable to [the

plaintiff] and drawing all inferences from those facts in favor of [the plaintiff], a rational

jury could come to the conclusion that [the defendants'] justification for [a particular action] is false.  Peralta V. Cendant Corp 123 F.Supp.3d 65 (2000).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."  Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).


### PLAINTIFF CAN ESTABLISH A PRIMA FACIE CASE OF RETALIATION

"A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment".  Meritor Savings bank v. Vinson, 477 U.S. 57, 64-65 (1986).  Whether a workplace should be viewed as hostile or abusive from both a reasonable person's standpoint as well as the victim's subjective perception can only be determined by considering the totality of the circumstances.  Harris Forklift Systems, Inc., 114 S.Ct. 367, 370 (1993).

Even if a work environment is found to be abusive, however, a plaintiff must establish that the conduct which created the hostile environment must be imputed to the employer.  Applying the Meritor standard to derive the employer liability, if a plaintiff's

supervisor is the alleged harasser, an employer will be liable if the supervisor uses his actual or apparent authority to further the harassment.

The first issue in the analysis is whether any of the named defendants were the Plaintiff's supervisor.   Both Mr. Newton and Ms. Watts Elder were above Mrs. Assegai' within her chain of command and hence, in a supervisory capacity to her.  A supervisor may be liable when he has been deliberately indifferent to an employee's complaint of employment discrimination. (Defendant's Exhibit 56).  This conduct on the part of the defendants demonstrates deliberate indifference as to the plaintiff's complaints of widespread and ongoing violations of her civil, constitutional, human and state rights.

Title VII provides that it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). In order to establish a prima facie case of retaliation, plaintiff must show (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action subsequent thereto; and (3) that a causal connection exists between his participation in the protected activity and the adverse employment action. Gallagher v. Delaney, 139 F.3d 338, 349 (2d Cir.1998).

The causal connection between the protected activity and the adverse employment action can be established indirectly with circumstantial evidence, for example, by showing that the protected activity was followed by discriminatory treatment or through evidence of disparate treatment of employees who engaged in similar conduct or directly through evidence of retaliatory animus. DeCintio v. Westchester County Medical Center, 821 F.2d 111, 115 (2d Cir.), cert. denied 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); Grant v. Bethlehem Steel, 622 F.2d 43, 46 (2d Cir. 1980). Title VII is violated if a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause, Davis v. State University of New York, 802 F.2d 638, 642 (2d Cir. 1986), and if the employer was motivated by retaliatory animus. Title VII is violated even if there were objectively valid grounds for the discharge. DeCintio, 821 F.2d at 116, n. 8.

Recall, that during Louis Martin's administration with CHRO Mrs. Bogle-Assegai was rumored to be favored by Mr. Martin (Exhibit 3). White employees at the CHRO felt that Mr. Martin's method of replacing white employees with black employees was heavy-handed (Exhibit 42). Newton was one of the white employees who believed that he was replaced because he is white (Exhibit 43). Newton obviously used the incident surrounding the January 26, 2001 phone call as a way to illegally investigate and

adversely harm Mrs. Bogle-Assegai's employment status. Similarly Mrs. Watts-Elder was able to use the investigation to discredit and terminate Mrs. Assegai.

"The plaintiff's burden of establishing a prima facie case of employment discrimination is 'not onerous.' Burdine, 450 U.S. at 253. Indeed, "[t]he nature of the plaintiff's burden of proof is *de minimis*." Harper v. Metropolitan District Commission, 134 F. Supp. 2d 470, 483 (D. Conn. 2001) (Covello, C.J.), citing, Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988). "As we have often emphasized, the burden of establishing this prima facie case in employment discrimination cases is 'minimal.'" McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). Direct evidence is not necessary, and a plaintiff charging discrimination against an employer is usually constrained to rely on the cumulative weight of circumstantial evidence. See, Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) ('An employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent.')." Luciano v. Olsten Corp., 110 F.3d 210, 215 (2d Cir. 1997). Often, "[w]hat is most revealing of the true intention behind the [adverse employment action] is the timing." Harper v. Metropolitan District Commission, 134 F. Supp. 2d 470, 489 (D. Conn. 2001) (Covello, C.J.).

**CONCLUSION**

For the reasons stated above, the plaintiff respectfully requests that the

defendants' motion for summary judgment be denied.


THE PLAINTIFF


BY:_____
Eroll V. Skyers
The Barrister Law Group, LLC
211 State Street
Bridgeport, CT 06604
Fed. No. ct12856
Tel:    203-334-4800
Fax:    203-333-7178
Her Attorney

## **CERTIFICATION  OF  SERVICE**

On January 18, 2005, copies of Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment was sent by regular U.S. mail to:


Joseph Jordano, Esq., AAG
55 Elm St., P.O. Box 120
Hartford, CT 06112


                                           _____

                                           EROLL V. SKYERS

## CERTIFICATE OF SERVICE

Plaintiff [ Bogle-Assegai]                    Case No. [ :02-cv-2292-JCH]

V.

Defendant [State of Connecticut, Commission on Human Rights and Opportunities, et al]


I hereby certify that on [January 18, 2005], a copy of foregoing [ Memorandum in Opposition to Defendants Motion for Summary Judgment] was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


/S/ [ Cynthia R. Jennings]

Cynthia R. Jennings, Esq., (ct21797)

/S/ [Eroll V. Skyers]

Eroll V. Skyers, Esq. (ct12856)

The Barrister Law Group, LLC

211 State Street

Bridgeport, CT 06604

Phone: (203) 334-4800

Fax: (203) 333-7178

E-mail: evskyers@barristerlawgroup.com