UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **FEMI BOGLE ASSEGAI** | : | 3:02 CV 2292 (JCH) |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| **STATE OF CONNECTICUT** | : | |
| **COMMISSION ON HUMAN** | : | |
| **RIGHTS AND OPPORTUNITIES,** | : | |
| and **CYNTHIA WATTS ELDER** *in* | : | |
| *her official capacity as Executive* | : | |
| *Director, Connecticut Commission of*: | | |
| *Human Rights and Opportunities,* | : | |
| *(CHRO) and* **LEANNE APPLETON,** | : | |
| *in her individual Capacity and official* | : | |
| *capacity as Director Of Finance of* | : | |
| *CHRO; and* **DONALD NEWTON** *in* | : | |
| *his individual capacity and official* | : | |
| *capacity as CHRO Chief of Field* | : | |
| *Operations*. | : | **JANUARY 18, 2005** |
| *Defendants.* | | |

**PLAINTIFF'S RULE 56(B)1 STATEMENT OF FACTS**

**Undisputed Facts**

1. Admit.

2. Admit.

3. Admit.

4. Admit.

5. Admit.

6. Admit.

7. Admit.

1

8. If "she" is a reference to the Plaintiff, then paragraph 8 is admitted, otherwise paragraph 8 is denied.

9. Admit.

10. Admit.

11. Admit.

12. Denied to the extent that paragraph 7 of Defendant's Exhibit 42 mentions a friendship between Valeria Caldwell Gaines and Femi Bogle-Assegai. (Defendant's Exhibit 42)

13. If "she" is a reference the Plaintiff, then paragraph 13 is admitted, otherwise paragraph 13 is denied.

14. Denied. (Exhibit 11).

15. Admit.

16. Admit.

17. Denied. Ms. Steinnagel's statements are not relevant past September 1998. (Defendant's Exhibit 34)

18. Denied. (Exhibit 11).

19. Admit.

20. Admit.

21. Deny. (Defendant's Exhibit 13, Plaintiff's Exhibit 11).

22. Admit.

23. Admit.

24. Admit.

25. Admit.

26. Admit.

27. Admit.

28. Admit.

29. Admit.

30. Admit.

31. Denied. (Plaintiff's Affidavit).

32. Admit.

33. Admit.

34. Admit.

35. Admit.

36. Admit.

37. Admit.

38. Admit without any concession as to the accuracy of the time recorded. (Plaintiff's Affidavit).

39. Admit.

40. Admit.

41. Admit.

42. Admit.

43. Admit.

44. Admit.

45. Admit.

46. Admit.

47. Admit.

48. Admit.

49. Admit.

50. Admit.

51. Admit.

52. Admit.

53. Admit.

54. Admit.

55. Admit.

56. Deny. (Defendant's Exhibit 13, Plaintiff's Exhibit 11).

57. Deny. (Defendant's Exhibit 13, Plaintiff's Exhibit 11).

58. Deny. (Defendant's Exhibit 58)

59. Admit.

60. Admit.

61. Admit.

62. Admit.

63. Admit.

64. Deny. (Plaintiff's Affidavit)

65. Admit.

66. Admit without any concession as to the accuracy of the time recorded. (Plaintiff's Affidavit).

67. Admit.

68. Admit.

69. Admit.

70. Admit.

71. Admit.

72. Admit.

73. Admit.

74. Admit.

75. Admit.

76. Admit.

77. Admit.

78. Admit.

79. Admit.

80. Admit.

81. Admit.

82. Admit. (Defendants' Exhibit 76 pp 221, 222).

83. Admit.

84. Admit.

85. Deny. (Plaintiff's Affidavit).

86. Admit.

87. Admit.

88. Admit.

89. Admit.

90. Deny. (Defendants' Exhibit 71).

91. Admit.

92. Deny.  Plaintiff's Affidavit).

93. Admit.

94. Admit.

95. Admit.

96. Admit.

97. Admit.

98. Admit.

99. Admit.

100. Admit.

101. Admit.

102. Admit.

103. Admit.

104. Admit.

105. Admit.

106. Admit.

107. Deny.  (Exhibit 23).

108. Admit.

109. Admit.

110. Admit.

111. Admit.

112. Admit.

113. Admit.

114. Admit.

115. Admit.

116.   Admit.

117.   Deny. (Exhibit 23).

118.   Admit.

119.   Admit.

120.   Admit.

121.   Deny. Effective termination date April 12, 2001 (Defendants' Exhibit 70).

122.   Admit.

123.   Admit.

**Disputed Issues of Material Fact**

1.   As far back as 1997 after Mrs. Bogle-Assegai had been appointed as a regional manager, she was under scrutiny. (Exhibit 1).

2.   The scrutiny was the result of being identified as a "Martin appointee" [appointed by a former Commissioner of CHRO, Louis Martin] and hence resented by many of her white counterparts at the Commission on Human Rights and Opportunities. (Exhibit 2).

3.   Mrs. Bogle-Assegai was favored employee by Mr. Martin (Exhibit 3).

4.   After receiving the position of Regional Manager within the Waterbury region, it became apparent to Mrs. Bogle-Assegai that the scrutiny that she was under was taking an aggressive twist.  (Exhibit 4).

5.   Mrs. Assegai responded to her suspicions through memos written by her.  On one occasion she received an accusatory phone call from Ms. Watts Elder with Mr. Newton in the room (Exhibit 5).

6.  Prior to the instant controversy and during the tenure of Ms. Watts-Elder there was never before any kind of theft of time investigation that involved any regional manager that was directed by the Commissioner of the CHRO. (Exhibit 6).

7.  Moreover as it concerns Mrs. Bogle-Assegai and prior to the present controversy; Mr. Newton, the Chief of field operations indicated that he never doubted the accuracy nor had any reason to doubt the accuracy of Mrs. Bogle-Assegai's reported time. (Exhibit 7).

8.  However, it appeared that there was a practice of managers working a volume unsanctioned hours in excess of the eight weekly hours, but then merely reporting the eight hours worked. (Exhibit 8).

9.  This was accomplished by the combination of coming in earlier in a workday and/or leaving later in the workday. In any event, managers were "expected to get the job done". (Exhibit 9).

10. In those instances a supervisor would only expect eight (8) hours reported on an employee's time sheet. (Exhibit 10).

11. Watts Elder admits that there may have been a pattern or practice of working unsanctioned hours and then making up the time during the work week. (Exhibit 11).

12. Although Watts Elder stated that such a practice was not encouraged; it appears that there was a degree of willful blindness on her part. Hence, the practice continued to occur. (Exhibit 12).

13. As it related to managers, there was no check or balance of managerial time reporting, the time sheet was taken at face value. Further, neither a review sheet nor log-in sheet was necessary for managers because the "time sheet governed". (Exhibit 13).

14.     Lastly, at the operative time of this controversy there was no practice of correlating time sheets and any other documents to cross reference employee time and attendance. (Exhibit 14).

15.     Mrs. Assegai disagreed with Newton's decision concerning her arrival to work on January 26, 2001 and acquiesced with his determination that leave time be utilized. (Exhibit 15).

16.     Fusco management audit report was not so extensive that part of it had to be corrected for daylight savings time. (Exhibit 16).

17.     Concerns about Femi came to the attention of Watts-Elder from Don Newton. (Exhibit 17).

18.     Newton indicated to Watts-Elder that a time discrepancy happened on more than one time sheet. (Exhibit 18).

19.     Watts-Elder directed the actions of those conducting the investigation. (Exhibit 19).

20.     Watts-Elder stated that she did not receive information from other office employees about Mrs. Assegai. (Exhibit 20).

21.     In fact, Watts-Elder received information about Mrs. Assegai on different "occasion[s]". (Exhibit 21).

22.     Newton could have recommended discipline short of termination. (Exhibit 22).

23.     Employees raised concerns to Watts-Elder about Mrs. Assegai. (Exhibit 23).

24.     Watts-Elder received information from office employees. (Exhibit 24).

25.     Newton did not believe Mrs. Assegai's explanation as to why he could not speak to her on the morning of January 26, 2001. (Exhibit 25).

26. Newton said he called Mrs. Assegai at the office at 10 am or 10:30 am. (Exhibit 26).

27. Newton stated that he was not concerned with Mrs. Assegai's time sheet when called her. (Exhibit 27).

28. According to Newton Assegai's one time sheet prompted full time reporting review. (Exhibit 28).

29. Newton did full time reporting review only because had the capability to do so. (Exhibit 29).

30. On one occasion Newton also gained swipe card information for central office employees; but did not have those reports compared against any central office time sheets (Exhibit 30).

31. There were occasions when Leanne Appleton was presumed to be working but never tracked observed to be working. (Exhibit 31).

32. Mrs. Assegai was the was the only person in the agency whose activity could be completely monitored. (Exhibit 32).

33. On occasion Ms. Watts-Elder used progressive discipline for others. (Exhibit 33).

34. Newton never exercised disciplinary action towards CHRO employees. (Exhibit 34).

35. Newton habitually accepted time sheets at face value. (Exhibit 35).

36. Newton never questioned any time sheet from any regional manager other than Mrs. Assegai. (Exhibit 36).

37. Newton never denied anyone using any type of leave balance from the time sheet. (Exhibit 37).

38. If someone was mistaken on the time sheet, Newton would change time to some type of leave. (Exhibit 38).

39. When telecommuting, Leanne Appleton was available by home phone or cell mobile phone. (Exhibit 39).

40. Although Appleton was directed to gain swipe card activity reports on Mrs. Assegai, she was never directed to pull swipe card records for any manager in central office. (Exhibit 40).

41. Mrs. Assegai was a favored employee of Louis Martin. (Exhibit 41).

42. Louis Martin took "heavy-handed" employment actions against white CHRO employees. (Exhibit 42).

43. Newton believed he suffered adverse employment action during Louis Martin's tenure because he is white. (Exhibit 43).

BY:_____
Eroll V. Skyers
The Barrister Law Group, LLC
211 State Street
Bridgeport, CT 06604
Fed. No. ct12856
Tel:   203-334-4800
Fax:   203-333-7178
Her Attorney

## CERTIFICATE OF SERVICE

Plaintiff [ Bogle-Assegai]  Case No. [3:02-cv-2292-JCH]

V.

Defendant [State of Connecticut, Commission on Human Rights and Opportunities, et al]

I hereby certify that on [ 18, 2005], a copy of foregoing [**Plaintiff's Rule 56(B)(1) Statement of Facts]** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/S/ [Cynthia R. Jennings]
Cynthia R. Jennings, Esq., (ct21797)
/S/ [Eroll V. Skyers]
Eroll V. Skyers, Esq. (ct12856)
The Barrister Law Group, LLC
211 State Street
Bridgeport, CT 06604
Phone: (203) 334-480
Fax: (203) 333-7178
evskyers@barristerlawgroup.com