UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FEMI BOGLE-ASSEGAI, | : | CIVIL ACTION NO. |
| *Plaintiff,* | : | 3:02CV2292(HBF) |
| | : | |
| V. | : | |
| | : | |
| STATE OF CONNECTICUT, | : | |
| COMMISSION ON HUMAN RIGHTS | : | |
| AND OPPORTUNITIES, et al. | : | |
| *Defendants* | : | FEBRUARY 2, 2005 |

### DEFENDANTS' REPLY TO PLAINTIFF'S
### RESPONSE TO SUMMARY JUDGMENT

The plaintiff's response to the summary judgment fails for several reasons, but most notably because her conclusory allegations and opinions are not sufficient to defeat summary judgment.[1] It is established law in this district that a plaintiff may NOT rely on "mere speculation or conjecture as compared to the proferred facts to overcome a motion for summary judgment." Lipton v. The Nature Company, 71 F.3d 464, 469 (2d Cir. 1995). The plaintiff's Rule 56(a)(2) Statement of Facts does not refute the specific facts set forth by the defendants' witnesses.[2] Instead, the plaintiff simply repeats her allegations in overly general conclusory statements, disguised to look like facts. Except for some peripheral facts, the plaintiff's own affidavit states conclusions or opinions without any actual evidence. Accordingly, a party may not rest on the "mere allegations or denials" contained in their pleadings. Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995); Jing Ying Gan v. City of New York, 996 F.2d

---

[1] The plaintiff's response does not address the issue of lack of personal jurisdiction over defendants Newton and Appleton and accordingly this issue is waived by the plaintiff.

[2] Plaintiff's Rule 56(a)(2) statement admits 107 of the 123 facts set forth by the defendants in their Rule 56 (a)(1) statement of facts.

522, 532 (2d Cir. 1993)(holding that a party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

The plaintiff's affidavit in which she makes conclusory opinions about being more closely scrutinized (and questions the defendants' motive) does not refute the defendants' legitimate non-discriminatory reason for her termination.[3]  The plaintiff has offered no evidence showing that Cynthia Watts Elder's decision to terminate the plaintiff was **motivated by race, religion or national origin**.

### PLAINTIFF CANNOT SHOW THAT THE ADVERSE ACTION WAS MOTIVATED BY HER RACE, RELIGION OR NATIONAL ORIGIN

Proving pretext in any Title VII case always rests with the plaintiff. In this case, Bogle-Assegai concedes numerous facts establishing a legitimate nondiscriminatory reason for Watts Elder's decision that defeat this case. For instance, the plaintiff admits that she was expected to be at work in the CHRO Regional office from 8 a.m. to 5 p.m. (Facts ¶ 41). She further acknowledges that Donald Newton continually reminded the managers that they were expected to be in the office on time and the plaintiff understood the attendance policy. (Facts ¶¶ 43, 44).  The plaintiff does not even attempt to refute the facts giving rise to the audit of her time records and the results of that audit showing many hours of time stolen from the state and the falsification of the plaintiff time sheets. (Facts ¶¶ 59-63, 65-73).[4]

---

[3] The plaintiff makes several assertions that include that she worked sufficient hours to get her work done and that the computer card access system for the Rowland Center that showed when the plaintiff entered and exited the garage under the building was not set for "daylight savings time." Plaintiff makes these baseless assertions despite the un-refuted testimony of the manager of the Rowland Center for the FUSCO Company who authenticated the accuracy of the computer printouts.

[4] The paragraphs cited in this section are admitted to by the plaintiff in her Rule 56(a)(2) statement.

2

The plaintiff's own explanation for the days that she allegedly was not at work show instances when she stopped at a credit union in Hartford to conduct personal banking when she was SUPPOSED to be at work. (Facts ¶ 72). On several instances when the plaintiff claims she was at work at 7:00 a.m., the computer records show no entries evidencing the plaintiff's arrival before the other scheduled staff arrived. (Facts ¶¶ 86-87). More telling is the testimony of Joanne Steinnagel, who the plaintiff testified was truthful and trustworthy, who stated that the plaintiff rarely came into the office before 10 a.m. and often left before 5 p.m. (Facts ¶¶s 16-17).

Even if the plaintiff's explanation for the time sheet discrepancies had some semblance of plausibility (she claimed that she parked on the street even though she had her own space under the building and she claimed that she let her husband use the car), defendant CHRO is entitled to rely on its good faith judgment of the facts based on the evidence that it had in its possession. This defendant reminds the court that errors in business judgment are not actionable discrimination. The CHRO is free to make any business decisions, even if considered by the plaintiff to be unwise, imprudent or based on ill will, provided that it is not motivated by an impermissible criteria such as race. Freeman v. Package Machinery Co., 865 F.2d 1331, 1341 (1st Cir. 1988). Furthermore, the plaintiff's opinion or speculation about why the CHRO acted as it did is NOT evidence of facts.

A careful review of the "evidence" submitted by the plaintiff demonstrates that she concedes that there are discrepancies in her time sheets as compared to the computer access card records. Instead, the plaintiff tries to shift the focus away from her conduct towards a claim that she was singled out for greater scrutiny than other employees such

as the CHRO business manager, Leanne Appleton. But the plaintiff has offered NO EVIDENCE that Leanne Appleton acted inappropriately, that her time cards were inaccurate or that Cynthia Watts Elder was aware of any irregularities and did nothing about it. In fact, Donald Newton states that when a former employee complained about Appleton, as employees often do regarding supervision, the matter was investigated by Watts Elder, who found nothing wrong. (Newton Affidavit, ¶ 9).

The burden rests with the plaintiff to demonstrate that other similarly situated employees were treated differently. The fact that Appleton is white does not alone come anywhere close to proving discrimination. In his supplemental affidavit accompanying this reply, Newton attests to the fact that Appleton was not similarly situated to the plaintiff. (Newton Affidavit, ¶ 9). More importantly, Newton confirms that the plaintiff was scrutinized no more than any of the other regional managers, two of whom were also minorities. (Newton Affidavit, ¶ 12).

Ironically, it was the plaintiff's OWN CONDUCT, not some type of conspiracy, that brought the issue of her time records to the attention of her supervisor. When the plaintiff's supervisor, Donald Newton, emailed Bogle-Assegai her about her time card in February 2001, instead of just responding by charging personal time to reflect the 1.5 hours the plaintiff was tardy to work on the date in question, she authored a scathing memo to her boss (Newton) insisting that she was at work and accusing him of harassment. It was only after Newton investigated the plaintiff's time card for that pay period to determine whose version of events (the plaintiff's or her staff's that reported her out of the office) was accurate, did evidence of a pattern of abuse by the plaintiff surface. (Facts ¶ 62).   Neither Newton nor Watts Elder did the audit of the CHRO Waterbury

4

employee time cards. ( Facts, ¶¶ 67-68). Instead it was done by the personnel office. More disturbing is the plaintiff's repeated failure to produce any records to substantiate that she was actually at work (after she initially claimed she could do so) when the computer access records, Joanne Steinnagle, and some of the plaintiff's own admissions demonstrate the contrary. (Facts ¶¶ 16-17, 79-89, 94-97). Simply put, the plaintiff's submission is devoid of any substantive evidence upon which any reasonable jury could conceivably find that her race, religion or national origin was a motivating factor in the decision to terminate her employment.

### THE PLAINTIFF'S ARGUMENT ABOUT THE STATUTE OF LIMITATIONS IS DIRECTLY CONTRARY TO LAW

The plaintiff's position regarding the 180-day limitations period for the filing of her EEOC complaint is directly contrary to law. The plaintiff argues that the date for triggering the 180-day filing period is not when the plaintiff learned that she would be fired, but when the decision to terminate her actually took effect. The courts in this circuit have rejected just such an argument in the application of this statutorily required limitations period. In Fant v. Columbia University, 1999 U.S. Dist LEXIS 6261 (S.D.N.Y. 1999), the Court held that the 180 day filing period is applied akin to any state of limitations, and runs from the day the plaintiff has notice of the defendant's alleged discriminatory act. See also, Tadros v. Coleman, 717 F. Supp. 996, 1006-07 (S.D.N.Y. 1989). Therefore, the filing period began to run on March 29, 2001, when the un-refuted evidence shows that Femi Bogle-Assegai learned that she was being terminated. (Facts ¶ 94, admitted in plaintiff's Rule 56(a)(2) response ¶ 94). Therefore, her filing of the EEOC complaint on October 1, 2001 is time barred. (Facts ¶ 121).

## PLAINTIFF'S EQUAL PROTECTION CLAIM FAILES BECAUSE SHE CANNOT PROVE SELECTIVE TREATMENT OR LEGAL CAUSATION.

The plaintiff suggests in her response that she was selectively singled out for disparate treatment in violation of her right to Equal Protection by the defendant CHRO. Since all claims against the defendants Appleton and Newton must be dismissed for lack of personal jurisdiction, and since Watts Elder has only been sued in her ***official capacity***, it is difficult to understand how such a claim can proceed against the state. Nevertheless, the plaintiff cannot show a violation of her equal protection rights.[5] In LeClair v. Saunders, 627 F.2d 606 (2d Cir. 1980), the United States Court of Appeals for the Second Circuit concluded that, to properly plead a selective treatment equal protection cause of action, a plaintiff must show that:

> (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith.

Id. at 609. See, e.g. Giordano v. City of New York, 274 F.3d 740, 750-51 (2d Cir. 2001); Trieste Rest. v. Village of Port Chester, 188 F.3d 65, 69 (2d Cir. 1999); Crowley v. Courville, 76 F.3d 47, 52-53 (2d Cir. 1996); Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995). The Second Circuit has been "careful to apply each prong of the test separately, finding the failure to satisfy either inquiry fatal to the plaintiff's claim." A.B.C. Home Furnishings, Inc. v. Town of East Hampton, 964 F. Supp. 697, 702 (E.D.N.Y. 1997); Latrieste Rest. v. Village of Port Chester, 188 F.3d 65, 70 (2d Cir. 1999).

---

[5] In failing to establish a prima facie disparate treatment claim under Title VII, a plaintiff also necessarily fails to meet the purposeful discrimination requirement for a section 1983 violation based on equal protection. See, Personnel Administrator v. Feeney, 99 S. Ct. 2282 (1979); Washington v. Davis, 96 S. Ct. 2040 (1976).

To satisfy the first prong of a selective treatment equal protection cause of action, a plaintiff must offer evidence that " she was similarly situated to other persons but was nevertheless treated differently," A.B.C. Home Furnishings, 964 F. Supp. at 702 (citing Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2d Cir. 1994); Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 61 (2d Cir. 1985). "To be similarly situated, the individuals with whom the litigant attempts to compare [himself] must be similarly situated in all material respects" and have "engaged in comparable conduct." Shumway v. United Parcel Service, Inc. 118 F. 3d 60, 64 (2d Cir. 1997).[6] See also, Yajure v. DiMarzo, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001)(noting "[t]he test for determining whether persons similarly situated were selectively treated is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent."

Applying these principles, plaintiff has plainly failed to raise a genuine issue of material fact as to the first prong of her selective treatment cause of action showing that she as compared with others similarly situated, was selectively treated. Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997). Although she alleges that she was singled out for more scrutiny than others, the plaintiff offers no substantive evidence to support such an allegation. There is absolutely no evidence, not a scintilla, that Appleton, to whom the plaintiff compares herself, falsified her time records and that Watts Elder failed to act. The plaintiff's suggestion of disparate treatment is further undermined by the convenient omission by the plaintiff of the fact that all of the other

---

[6] Shumway discusses the standard for "similarly situated" in the context of Title VII. However, the Second Circuit applies the same Shumway "similarly situated" standard in the context of selective treatment equal protection cases. See e.g. LaTrieste Rest. v. Village of Port Chester, 188 F.3d 65, 69 (2d Cir. 1999); Hart v. Westchester City Dept. of Social Services, 160 F. Supp. 2d 570, 578 (S.D.N.Y. 2001).

7

permanent regional managers in 2001 were minorities (2 black and 1 Hispanic), none of whom were allegedly unduly scrutinized. The only reason for the investigation into the plaintiff's time records was the plaintiff's own conduct of claiming credit for time when her supervisor was told she was not at work.

The plaintiff also admits that the ENTIRE Waterbury staff time records were audited, not just hers. (Facts ¶ 67). Moreover, the unrefuted evidence shows that at the time, the only regional office with the card access system was in Waterbury. (Newton Affidavit, ¶ 4). The plaintiff has offered no evidence that defendant Watts Elder was aware of any irregularities in time records of other managers. The plaintiff concedes that she has no evidence of other employees falsified their time sheets. (Facts, ¶ 95).

Second, the plaintiff mistakenly presumes that if she was treated differently than another employee in **any** respect, that necessarily denotes a constitutional violation. The constitution does not requires that people be treated identically in all respects. Saulpaugh v. Monroe Community Hospital, 4 F.3d 134, 143-44 (2d Cir. 1993). What the constitution prohibits is unequal treatment based on some impermissible criteria such as race or national origin, or the malicious deprivation of rights. Bogle-Assegai fails to comprehend that an employer can provide greater supervision to one employee versus another if there exists a legitimate business reason to do so. This is especially true when an employee has a history of poor judgment, inappropriate conduct or poor skill sets. Although in the present case Bogle-Assegai was not selectively scrutinized as compared to other managers, there certainly existed a documented history of behavior by the plaintiff that justified addressing any employment concern that arose. The plaintiff admits that in 1997 and 1998 she was counseled by the prior CHRO administration about

her misuse of the state gas card, misuse of the state car, arriving late to work, inaccurate time sheets, and other work related issues. (Facts ¶ 100, Exhibits. 6-11). Just months before the incident that led to her termination, she failed to appear at work on time for a meeting. (Facts ¶¶ 51-53). In short, studious supervision is not illegal discrimination.

Even IF the plaintiff could show disparate treatment, there is no evidence that such alleged disparity was motivated by the plaintiff's membership in a protected class. Carrero v. New York City Housing Authority, 890 F.2d 569, 577 (2d Cir. 1989). The plaintiff's equal protection claim fails in this respect because she cannot refute the defendant's legitimate non-discriminatory reason for her termination.

### PLAINTIFF'S RETALIATION CLAIMS FAILS BECAUSE SHE NEVER ENGAGED IN ANY LEGALLY RECOGNIZED PROTECTED ACTIVITY, NOR CAN SHE PROVE LEGAL CAUSATION.

The plaintiff's discussion of a retaliation claim in pages 17-20 of her memorandum is a hodge-podge of legal generalizations unaccompanied by any substantive evidence showing that the plaintiff was retaliated against for opposing acts of discrimination. As part of a prima facie case, the plaintiff has to offer evidence that she engaged in protected activity and that some legally recognized adverse action befell her that is *causally* related to the protected activity. Galdieri-Ambrosini v. national Realty & Development Corp., 136 F.3d 276, 292 (2d Cir. 1998). This is no small task in this case because Bogle-Assegai fails to offer any evidence identifying what protected activity she engaged in, when it occurred, whether it fell within the 180 filing period, and how it is causally related to her termination in 2001. Instead, what is presented in her brief is simply a confusing mix of legal discussion about the law of retaliation and a hostile work environment.

Even if the plaintiff could identify acts of "protected activity" that fall within the statutory filing period under Title VII [within 180 days of March 29, 2001 when the plaintiff learned she would be terminated], there is no evidence refuting the defendant's legitimate non-retaliatory reason for her dismissal, namely the falsification of her time records.

The issue of a hostile work environment is addressed by the defendants in their memorandum in support of summary judgment and will not be discussed at length here. It will suffice to state that the plaintiff has again failed to offer any evidence of "RACE" based ridicule that permeated her work environment that could even conceivably support such a claim.

## CONCLUSION

The Plaintiff's submission is woefully insufficient to overcome summary judgment, much less establish a prima facie case for discrimination. She knows that she stole state time and despite her obfuscation of this fact, when obligated to actually produce evidence to substantiate her allegations, she has none. Accordingly, the defendants' motion should be granted for the reasons set forth in their motion for summary judgment.

DEFENDANTS

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Joseph A. Jordano
Assistant Attorney General
Federal Bar # ct21487
55 Elm Street, P. O. Box 120
Hartford, CT 06141-0120
Tel: 860-808-5340
Fax: 860-808-5383
Email: Joseph.Jordano@po.state.ct.us

## CERTIFICATION

The undersigned hereby certifies that on the 2nd day of February, 2005, a true and accurate copy of the foregoing was sent by United State mail, postage prepaid, to the following:

Cynthia Jennings, Esq.
Erroll Skyers, Esq.
The Barrister Law Group
211 State Street, 2nd Floor
Bridgeport, CT  06604

_____
Joseph A. Jordano
Assistant Attorney General

11