UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

|                              |   |                          |
|------------------------------|---|--------------------------|
| FEMI BOGLE-ASSEGAI           | : |                          |
|                              | : |                          |
| v.                           | : | CIV. NO. 3:02CV2292 (HBF)|
|                              | : |                          |
| STATE OF CONNECTICUT,        | : |                          |
| COMMISSION ON HUMAN RIGHTS   | : |                          |
| AND OPPORTUNITIES,           | : |                          |
| CYNTHIA WATTS-ELDER,         | : |                          |
| LEANNE APPLETON, and         | : |                          |
| DONALD NEWTON                | : |                          |

                RULING ON MOTION FOR SUMMARY JUDGMENT

    Plaintiff, Femi Bogle-Assegai, brings this five count complaint for unlawful termination of her employment under 42 U.S.C. §2000e et seq. (Title VII), 42 U.S.C. §§198, 1983 (civil rights) and Sections §§46a-58(a), 46a-60(a)(1), (4), (5), 46a-70 and 46a-71 of the Connecticut Fair Employment Practices Act ("CFEPA"). [1] She alleges that her former employer and co-workers discriminated against her in her employment on the basis of race, color, national origin and religion.[2]

---

[1] Defendants are the State of Connecticut Commission on Human Rights and Opportunities ("CHRO"); Cynthia Watts-Elder, the former CHRO Executive Director, sued in her official capacity; Leanne Appleton, CHRO Director of Finance, sued in her individual and official capacities; and Donald Newton, CHRO Chief of Filed Operations, sued in his individual and official capacities.

[2] In Count One, plaintiff alleges discriminatory employment practices against the CHRO pursuant to Title VII, 42 U.S.C. §2000e (2) and (3), Conn. Gen. Stat. §§46a-58(a), 46a-60(a)(1), (4), (5). In Count Two, plaintiff alleges discriminatory or disparate treatment by Watts-Elder, Appleton and Newton in violation of 42 U.S.C. §1981, 1983, and Article First, §20 of the Connecticut Constitution. In Count Three, plaintiff alleges a hostile work environment against the CHRO. Count Four contains

Pending is all defendants' Motion for Summary Judgment **[Doc. #45]**.  For the reasons that follow, defendants' motion is **GRANTED**.

STANDARD OF LAW

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  See  D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, (1986).  The non-moving party may not rely on conclusory allegations or unsubstantiated speculation.  See D'Amico, 132 F.3d at 149.  Instead, the non-moving party must produce specific, particularized facts indicating that a genuine factual issue exists. See  Wright v. Coughlin, 132 F.3d 133, 137 (2d Cir. 1998).  To defeat summary judgment, "there must be evidence on which the jury could reasonably find for the [non-movant]."  Anderson, 477 U.S. at 252.  If the evidence produced by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted.  See

---

an allegation of discriminatory employment practices against Watts-Elder, Appleton and Newton in violation of 42 U.S.C. §1981, the equal protection clause of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. §1983, and Article First, §8 of the Connecticut Constitution.  Finally, in Count Five, plaintiff alleges a violation of Conn. Gen. Stat. §46a-70 ("guarantee of equal employment in state agencies"), Conn. Gen. Stat. §46A-71 ("discriminatory practices by state agencies prohibited") and seek relief pursuant to Conn. Gen. Stat. §46a-99.

<u>id.</u> at 249-50.

Pursuant to D. Conn. L. Civ. R. 56(a)(3),

> Each statement of material fact in a Local Rule 56(a)1 Statement by a movant or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. The affidavits, deposition testimony, responses to discovery requests, or other documents containing such evidence shall be filed and served with the Local Rule 56(a)1 and 2 Statements in conformity with Fed. R. Civ. P. 56(e). Counsel and pro se parties are hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule may result in sanctions, including, when the movant fails to comply, an order denying the motion for summary judgment, and, when the opponent fails to comply, an order granting the motion.

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." <u>Soto v. Meachum</u>, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 12 (2d Cir. 1986), <u>cert. denied</u>, 480 U.S. 932 (1987).

A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements.   <u>See</u> <u>Securities & Exchange Comm'n v. Research Automation Corp.</u>, 585

F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible). A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990).

FACTS

Based on defendants' Local 56(a)(1) Statement and exhibits and plaintiff's Local 56(a)2 Statement and exhibits, the following facts are undisputed.[3]

The Parties

1.  Plaintiff Femi Bogle-Assegai is a resident of the State of Connecticut. [Pl. Local Rule 56(a)(1) Stat. Doc. #45-2, ¶1; Def. Local Rule 56(a)(2) Stat. Doc. #54, ¶1]. She is an African American black woman of West Indian (Jamaican) descent. She is over forty (40) years old. [Compl. ¶11].

2.  Plaintiff was hired by CHRO Executive Director Louis Martin on January 3, 1992. [Doc. #45-2, ¶2; Doc. #54, ¶2]. At the

---

[3]The Court finds only those facts necessary to rule on the issues decided in this ruling.

      time of the termination of her employment, plaintiff was Regional Manager of the CHRO office in Waterbury, Connecticut. [Doc. #45-2, ¶11; Doc. #54, ¶11].

3. Defendant Cynthia Watts-Elder served as the Executive Director of the CHRO from March 1999 through August 2003. [Doc. #45-2, ¶3; Doc. #54, ¶3].

4. Defendant Leanne Appleton served as the Fiscal Administrative Supervisor (Business Manager) for the CHRO from January 27, 1994, through 2004. [Doc. #45-2, ¶4; Doc. #54, ¶4].

5. Defendant Donald Newton has been employed by the CHRO for over thirty (30) years and, since fall 1999, has been serving as the Chief of Field Operations. [Doc. #45-2, ¶6; Doc. #54, ¶6].

<u>Service of Process: Appleton and Newton</u>

6. Service of process was effectuated against defendants CHRO, Watts-Elder, Appleton and Newton in their official capacity at the Office of the Attorney General on December 27, 2002. [Doc. #5].

7. Defendant Leanne Appleton was not personally served with process in this case and at no time did she authorize anyone to accept personal service of process on her behalf. [Doc. #45-2, ¶5; Doc. #54, ¶5].

8. Defendant Donald Newton was never personally served with process in this case and at no time did he authorize anyone to accept personal service of process on his behalf. [Doc.

5

   #45-2, ¶7; Doc. #54, ¶7].

Filing of Administrative Charge

9.  On March 29, 2001, Cynthia Watts-Elder informed plaintiff that her employment was terminated, effective April 12, 2001. [Doc. #45-2, ¶7, 93; Doc. #54, ¶93]. The letter was hand delivered to plaintiff. [Def. Ex. 70].

10. The termination letter states in part, "Although your dismissal will be effective April 12, 2001, and you will [be] paid through that date, from this day forward, you will neither be expected (nor authorized) to report to work." [Def. Ex. 70].

11. Plaintiff filed her charge of discrimination directly with the EEOC on October 1, 2001, 186 days after receiving her employment termination notice on March 29, 2001. [Doc. #45-2, ¶121, Def. Ex. 70, 84].

12. On September 17, 2002, a "no cause" finding was issued by the EEOC. [Def. Ex. 84].

13. Plaintiff filed this federal action on December 24, 2002. [Doc. #1].

DISCUSSION

1.  Service of Process: Appleton and Newton

   Defendants Appleton and Newton contest personal jurisdiction under Rule 12(b)(5), based on lack of proper service of process.[4]

---

[4] In the Amended Answer, defendants raised the issue of lack of personal jurisdiction pursuant to Rule 12(b)(4) and 12(b)(5). [Doc. #18 at 10].

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5), must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure. Cole v. Aetna Life & Cas., 70 F. Supp. 2d 106, 109 (D. Conn. 1999). "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." Id. at 110 (citations omitted).

It is undisputed that Appleton and Newton were not served in their individual capacities with the summons and complaint. See Fed. R. Civ. P. 4(e) and (f); Conn. Gen. Stat. §52-57(a). Both Appleton and Newton executed affidavits stating that they were not served personally and no one was authorized to accept service of process for them in their individual capacities. [Doc. #45-2, ¶¶5, 7; Stat. Doc. #54, ¶¶5, 7]. Service through the CHRO in their official capacity is not sufficient is constitute personal service. Burgos v. Dep't of Children and Families, 83 F. Supp. 2d 313, 316 (D. Conn. 2000). Plaintiff concedes that defendants Appleton and Newton were only served in their official capacity.

Accordingly, the motion to dismiss is granted in favor of defendants Appleton and Newton in their individual capacities.

2. Eleventh Amendment

Defendants argue that the Eleventh Amendment bars suit against the CHRO and defendants Watts-Elder, Appleton and Newton in their official capacities.

7

Under the Eleventh Amendment[5] to the United States Constitution, states generally enjoy immunity from suit in federal court by all private parties for all causes of action. Bd. Of Trs. of the Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98 (1984). This immunity applies to state agencies and departments, as well state officials who act on its behalf. Burnette v. Carothers, 192 F.3d 52, 57 (2d Cir. 1999), cert. denied, 531 U.S. 1052 (2000); Gaynor v. Martin, 77 F. Supp. 2d 272, 281 (D. Conn. 1999). The CHRO is a state agency and is, therefore, covered by the Eleventh Amendment.

A state may be subject to suit in federal court one of two ways: (1) Congress can divest a state of immunity through a statutory enactment, as it has done with Title VII; or (2) a state may waive its immunity and agree to be sued in federal court. Close v. New York, 125 F.3d 31, 39 (2d Cir. 1997). However, a state may consent to suit in its own courts without consenting to suit in federal court. Smith v. Reeves, 178 U.S. 436, 441-45 (1900); Pennhurst, 465 U.S. at 99; see also Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 54 (1944) ("A clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found.").

---

[5]The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Connecticut has not waived its immunity and consented to suit in federal court under § 1981 or §1983, and Congress's enactment of §1981 and §1983 did not override the immunity that the states and their agencies enjoy under the Eleventh Amendment, see, e.g., Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989); Quern v. Jordan, 440 U.S. 332, 343 (1979).

Plaintiff's state-law CFEA claims are similarly barred. Under Connecticut law, Conn. Gen. Stat. §§46a-99, 46a-100,[6] "Connecticut waived its immunity to suit in state court for CFEA claims. But it has not clearly expressed a waiver to suit in federal court. Therefore, the courts in this district have consistently found that CFEPA claims against the state and its agents are barred by the Eleventh Amendment." Alungbe v. Board of Trustees of the Connecticut State University (CSU) System, 283 F. Supp. 2d 674, 687-88 (D. Conn. 2003) (citing Lyon v. Jones, 168 F. Supp. 2d 1, 6, (D. Conn. 2001)).

---

[6]Conn. Gen. Stat. §46a-99 states,

Any person claiming to be aggrieved by a violation of any provision of sections 46a-70 to 46a-78 . . . may petition the superior court for appropriate relief and said court shall have the power to grant such relief, by injunction or otherwise, as it deems just and suitable.

Conn. Gen. Stat. §46a-100

Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a-82 and who has obtained a release from the commission . . . [for] any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford."

Moreover, courts in this district have held that Section 46a-58 does not provide for a private cause of action under the statute. Garcia v. Saint Mary's Hosp., 46 F. Supp. 2d 140, 142 (D. Conn. 1999) ("Section 46a-58 claims must be brought through the CHRO's administrative procedures.") (citation omitted): Alungbe, 283 F. Supp. 2d at 687; Lyon, 168 F. Supp. 2d at 6, n.2.

Accordingly, summary judgment on Counts Two, Four and Five is granted in favor of the CHRO and defendants Watts-Elder, Appleton and Newton in their official capacities.

3.   Plaintiff's Title VII Claims Are Untimely

"Title VII requires aggrieved persons to file a complaint with the EEOC 'within one hundred and eighty days after the alleged unlawful employment practice occurred.'" Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (citing 42 U.S.C. §2000e-5(e).[7]  This limitations period is to be strictly construed.  Lenox v. Unisys Corp. 32 F. Supp. 2d 44, 45 (D. Conn. 1999) (citing Economu v. Borg-Warner, Corp., 829 F.2d 311, 315 (2d Cir. 1987) (complaint dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), where ADEA claim had been filed 301 days after plaintiff received termination notice)).

A claim of employment discrimination accrues on the date the

---

[7] Under certain circumstances, the filing period is extended to three hundred (300) days.  42 U.S.C. §2000e-5(e)(1)("[E]xcept that in a case of unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice. . . .").  Here, plaintiff only filed a claim with the EEOC; thus the 180 day limitations period applies.

termination decision is made and communicated to the employee. Ricks, 449 U.S. at 258. "The proper focus is on the time of the discriminatory act, not on the point at which the consequences of the act become painful." Chardon v. Fernandez, 454 U.S. 6, 8 (1981) (citing Ricks, 449 U.S. at 258). It follows that "the last date of employment may not always coincide with the start of the statutory limitation clock." Lenox, 32 F. Supp. 2d at 45 (dismissing complaint where ADEA administrative charge was filed 321 days following receipt of his formal notice of termination). Rather, "the limitation period begins to run on the date the employee receives 'definite notice of termination.'" Id. (quoting Economu v. Borg-Warner Corp., 829 F.2d 311, 315 (2d Cir. 1987)).

In this case, plaintiff received her formal notice of termination on March 29, 2001. [Def. Ex. 70]. The termination notice stated that she was no longer authorized to report to work after March 29, 2001. Id. Her administrative charge was filed on October 1, 2001, 186 days following her formal notice of termination. [Def. Ex. 70, 84]. Plaintiff's contention that the limitations period begins to run as of the effective date of her termination, April 12, 2001, is unsupported by the case law. Plaintiff also argues that, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability." [Doc. #53 at 6 (citing National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002)). In this case, plaintiff's termination of employment was

11

a discrete act.  Only incidents that took place within the timely filing period are actionable.  Plaintiff fails to identify any evidence in the record to support her claim of a "continuing violation" after March 29, 2001, the dated she received formal notice of termination.  See National Railroad Passenger Corp., 536 U.S. at 114.

Accordingly, summary judgment shall enter in favor of defendant CHRO on the Title VII claims set forth in Counts One and Three.

CONCLUSION

Accordingly, defendants' Motion for Summary Judgment Counts One through Five **[Doc. #45]** is **GRANTED**.

This is not a recommended ruling.  The parties consented to proceed before a United States Magistrate Judge [Doc. #20] on September 11, 2003, with appeal to the Court of Appeals.

Dated at Bridgeport, this 10th day of March 2005.

```
            ___/s/_____
            HOLLY B. FITZSIMMONS
            UNITED STATES MAGISTRATE JUDGE
```