FEMI BOGLE-ASSEGAI, Plaintiff-Appellant, - v. - STATE OF CONNECTICUT, CONNECTICUT COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES; and CYNTHIA WATTS-ELDER, in her official capacity as Executive Director, Connecticut Commission on Human Rights and Opportunities, ("CHRO") and LEANNE APPLETON, in her individual and official capacity as Director of Finance of CHRO; and DONALD NEWTON, in his individual and official capacity as CHRO Chief of Field Operations, Defendants-Appellees.

Docket No. 05-1858 -cv

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

2006 U.S. App. LEXIS 29370

April 27, 2006, Argued
November 29, 2006, Decided

PRIOR HISTORY: [*1] Appeal from a judgment of the United States District Court for the District of Connecticut, Holly B. Fitzsimmons, Magistrate Judge, dismissing employment discrimination claims, see *42 U.S.C. §§ 1981, 1983*; Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.*, on grounds of lack of service of process, *Eleventh Amendment* immunity, and untimeliness.

DISPOSITION: Affirmed.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff former employee of defendant Connecticut Commission on Human Rights and Opportunities (CHRO), appealed a judgment of the U.S. District Court for the District of Connecticut dismissing the employee's suit alleging that CHRO and various of its officials discriminated against her and terminated her employment in violation of *42 U.S.C.S. §§ 1981, 1983*; Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e* et seq.; and state law.

OVERVIEW: The employee argued that her Title VII claims were not time-barred, and that she should have been given an opportunity to remedy the flaws in the service of process. Faced with a summary judgment motion expressly asserting that her charge had not been dually filed with the state agency and that the 300-day filing period therefore did not apply to her claims, the employee had every incentive and opportunity to contest that argument. She made no argument to the district court in opposition. And in arguing to the instant court that the 300-day period was applicable, the employee proffered no reason for her failure to make that argument in the district court and pointed to no evidence that supported her factual premises; therefore, appellate consideration of her unpreserved argument was unwarranted. The employee who was neither a pro se litigant nor incarcerated, made no showing whatsoever as to any effort on her part to effect personal service on two officials. The employee also made no effort to show good cause for her failure and never requested an extension of time during the 600-odd days when the case was pending after she first learned of the officials' objections to service.

OUTCOME: The judgment of the district court was affirmed.

LexisNexis(R) Headnotes

Civil Procedure: Appeals: Reviewability: Preservation for Review
[HN1] It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal. However, when a rule is prudential, not jurisdictional, appellate court have discretion to consider waived arguments and have exercised this discretion where necessary to avoid a manifest injustice or where the argument presents a question of law and there is no need for additional factfinding. Nonetheless, the circumstances normally do not militate in favor of an exercise of discretion to address new arguments on appeal where those arguments were available to the parties below and they proffer no reason for their failure to raise the arguments below.

Labor & Employment Law: U.S. Equal Employment Opportunity Commission: General Overview

Labor & Employment Law: U.S. Equal Employment Opportunity Commission: Time Limitations: General Overview

[HN2] The mere citation to a statute that provides alternative filing periods, the applicability of each turning on whether the United States Equal Employment Opportunity Commission has or does not have a work-sharing agreement with the state agency, does not constitute an assertion that there in fact existed such an agreement at the pertinent time and that the longer period applies.

Civil Procedure: Pleading & Practice: Service of Process: Methods: General Overview
[HN3] See *Fed. R. Civ. P. 4(e)*.

Civil Procedure: Pleading & Practice: Service of Process: Methods: Residential Service
Civil Procedure: Pleading & Practice: Service of Process: Methods: Service Upon Agents
[HN4] Connecticut law provides that delivery to the Attorney General constitutes service on an individual state officer or employee "as" an officer or employee: Service of civil process in any civil action or proceeding maintainable against the state or any officer, servant, agent or employee of the state or of any such institution, board, commission, department or administrative tribunal, as such, may be made by leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General or at his office in Hartford. *Conn. Gen. Stat. § 52-64* (2005). This provision on its face does not authorize service through the Attorney General's office on an individual State employee in his or her individual capacity. With respect to an individual who is an officer or employee of the State but is not sued as such, Connecticut law requires that service be made by leaving the summons and complaint with the defendant or at his usual place of abode, *Conn. Gen. Stat. § 52-57(a)*.

Civil Procedure: Pleading & Practice: Service of Process: Time Limitations: General Overview
[HN5] See *Fed. R. Civ. P. 4(m)*.

COUNSEL: JOSEPHINE SMALLS MILLER, Danbury, Connecticut (Cynthia R. Jennings, The Barrister Law Group, Hartford, Connecticut, on the brief), for Plaintiff-Appellant.

JOSEPH A. JORDANO, Assistant Attorney General, Hartford, Connecticut (Richard Blumenthal, Attorney General of the State of Connecticut, Hartford, Connecticut, on the brief), for Defendants-Appellees.

JUDGES: Before: KEARSE, McLAUGHLIN, and SACK, Circuit Judges.

OPINION BY: KEARSE

OPINION:
KEARSE, Circuit Judge:

Plaintiff Femi Bogle-Assegai, a former employee of defendant Connecticut Commission on Human Rights and Opportunities ("CHRO"), appeals from a judgment of the United States District Court for the District of Connecticut, Holly B. Fitzsimmons, Magistrate Judge, dismissing her[*2] complaint alleging principally that CHRO and various of its officials discriminated against her and terminated her employment in violation of her rights under *42 U.S.C. § 1981*, as enforced through *42 U.S.C. § 1983*; Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.*; and state law. The district court granted defendants' motions to dismiss Bogle-Assegai's *§§ 1981* and *1983* claims and her state-law claims on the grounds that (a) defendants State of Connecticut (the "State"), CHRO, and CHRO employees in their official capacities had *Eleventh Amendment* immunity against such claims, and (b) the individual defendants had not been served with process in their individual capacities. The court granted summary judgment dismissing Bogle-Assegai's Title VII claims on the ground that they were time-barred because she had not asserted them in an administrative complaint within 180 days of the allegedly unlawful employment actions. On appeal, Bogle-Assegai contends principally (1) that her Title VII claims are not time-barred, and (2) that she should have been given an opportunity to remedy the flaws in the[*3] service of process. For the reasons that follow, we affirm.

I. BACKGROUND

Except as indicated below, the facts, as asserted in defendants' motion for summary judgment and admitted by Bogle-Assegai in response to that motion, include the following.

A. The Parties and the Course of Bogle-Assegai's Employment

Bogle-Assegai, an African-American of Jamaican descent, was first employed by CHRO in the early 1990s as an investigator, initially in a provisional position and thereafter in a permanent position. In 1995, she was promoted to be regional manager of CHRO's office in Bridgeport; in 1997, she became regional manager of its Waterbury office.

Defendant Cynthia Watts-Elder was executive director of CHRO from March 1999 until August 2003.

Defendant Leanne Appleton was CHRO's fiscal administrative supervisor from January 1994 until 2004.

Defendant Donald Newton, a CHRO employee for more than 30 years, began serving as its chief of field operations in 1999. In that capacity, he supervised CHRO's regional managers. He continually reminded all regional managers, including Bogle-Assegai, that they were expected to be at work every day in accordance with their approved schedules. [*4]

Bogle-Assegai, in her two positions as manager of CHRO regional offices, was responsible for supervising the staffs and operations of those offices. Her scheduled working hours were 8 a.m. to 5 p.m. In early 2001, Newton questioned Bogle-Assegai about a time sheet representing that she had worked eight hours on January 26, 2001, a day on which Newton had telephoned her office at 10 a.m. and been informed that she was not in. Bogle-Assegai responded that she had in fact been in the office when Newton called, because she had arrived at work that day at 9:30 a.m. (not by 8 a.m. as her schedule required). Newton sought additional information to shed light on the discrepancy between Bogle-Assegai's insistence that she had been in her office by 9:30 a.m. and the staff member's statement that Bogle-Assegai had not arrived by 10 a.m.

As Bogle-Assegai had an official parking space in a garage with an electronic swipe-card access system, Newton asked Appleton to obtain the access-card records for January 26, 2001, from the garage operator. She did so, and the records for that date showed that Bogle-Assegai had arrived in the garage at 10:30 a.m. Further, other access-card records, whose[*5] accuracy Bogle-Assegai does not concede, showed numerous occasions when Bogle-Assegai arrived several hours late for work, occasions when she left work before the scheduled end of the day, and occasions when she both arrived late and left early. For example, for the period November 13, 2000, through February 22, 2001--which encompassed 68 non-holiday weekdays--the access-card records showed that Bogle-Assegai arrived more than one hour late 34 times, including 15 days on which she arrived more than two hours late. After a review of these records, Watts-Elder requested an audit of all CHRO employee time sheets. Examination of Bogle-Assegai's time sheets revealed numerous hours claimed as work time that were contradicted by the garage access-card records of her times of arrival and departure.

On March 1, 2001, Watts-Elder informed Bogle-Assegai in writing that an investigation of her time records had been conducted and that, based on that investigation, CHRO was considering formal discipline, including dismissal. CHRO held a formal hearing on March 12; Bogle-Assegai attended, but she refused to participate or answer questions. She requested and was granted an opportunity to provide[*6] a written response; but her response provided no information addressing the discrepancies between her time sheets and the garage access-card data.

On March 29, 2001, Bogle-Assegai received a letter from Watts-Elder, stating that Bogle-Assegai's employment with CHRO would be terminated effective April 12, 2001. (See Letter from Watts-Elder to Bogle-Assegai dated March 29, 2001 ("Termination Letter").) The Termination Letter also informed Bogle-Assegai that "[a]lthough your dismissal will be effective April 12, 2001, and you will be paid through that date, from this day forward, you will neither be expected (nor authorized) to report to work." (Id. at 1.) The letter stated that Bogle-Assegai was being dismissed for the good of CHRO, "as a result of [her] fraudulent use of state time." (Id.)

On October 1, 2001, Bogle-Assegai filed an administrative complaint with the United States Equal Employment Opportunity Commission ("EEOC"). She thereafter received a right-to-sue letter.

B. The Present Action and the Motions To Dismiss

Bogle-Assegai commenced the present action in December 2002 against the State and CHRO, against Watts-Elder in her official capacity, [*7] and against Appleton and Newton in their official and individual capacities, alleging that Bogle-Assegai had been the victim of discrimination on the basis of race, color, and national origin. The complaint alleged that the State and CHRO had subjected her to a hostile work environment and terminated her employment in violation of Title VII. Invoking *42 U.S.C. § 1983*, it alleged that defendants had discriminated against Bogle-Assegai on the basis of race, color, and national origin in violation of *42 U.S.C. § 1981* and her right to equal protection. The complaint also alleged that defendants' conduct violated the Connecticut Fair Employment Practices Act ("CFEPA"), *Conn. Gen. Stat. §§ 46a-70, 46a-71*. The parties consented to have the case assigned to a magistrate judge for all purposes.

Following discovery, defendants moved to dismiss Bogle-Assegai's claims on various grounds. Appleton and Newton, who in their amended answer to the complaint had alleged insufficiency of service of process, sought dismissal pursuant to *Fed. R. Civ. P. 12(b)(5)* of the claims asserted against[*8] them in their individual capacities, arguing that they had not been served personally. They submitted affidavits stating that they had been served only through the office of the State

Attorney General and that they had not authorized that office to accept service on their behalf.

In addition, all defendants moved pursuant to *Fed. R. Civ. P. 56* for summary judgment dismissing Bogle-Assegai's *§§ 1981* and *1983* claims against the State, CHRO, and the individual defendants in their official capacities on the ground that those claims were barred by the *Eleventh Amendment*. Defendants contended that the *Eleventh Amendment* also barred Bogle-Assegai's pursuit of her state-law claims in federal court, as "the Connecticut legislature only authorized suit in the Connecticut Superior Court" on such claims, "not in the federal court." (Defendants' Memorandum in Support of Their Motion for Summary Judgment ("Defendants' Summary Judgment Memorandum") at 39 (emphasis in original).)

Defendants sought summary judgment dismissing Bogle-Assegai's Title VII claims on the ground that they were time-barred because she had not filed her administrative charge with[*9] the EEOC within the 180-day period specified by *42 U.S.C. § 2000e-5(e)(1)* for filings with the EEOC. Defendants noted that the period for Bogle-Assegai to file an administrative claim of discriminatory discharge began on the date on which she received notification that her employment would thereafter be terminated (see Defendants' Summary Judgment Memorandum at 23 (citing *Delaware State College v. Ricks, 449 U.S. 250, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980)*); that Bogle-Assegai had received formal notice of termination on March 29, 2001; and that she had filed her charge with the EEOC on October 1, 2001, more than 180 days later. Defendants observed that *§ 2000e-5(e)(1)* provides that the filing period is 300 days rather than 180 days where a claimant has filed her claims with a state or local agency, but they pointed out that Bogle-Assegai

did not institute proceedings with a state or local agency (i.e. CHRO) with authority to grant relief in compliance with 42 [U.]S.C. *§ 2000e-5(e)*, nor did the EEOC defer the Complainant's charge to the state agency . . . in Connecticut for an investigation. Therefore, the appropriate[*10] limitations period is 180 days from March 29, 2001. . . .

Since there was no dual filing with both CHRO and EEOC (it was filed only with EEOC), the plaintiff is not entitled to 300 days and her Title VII claim is untimely and must be dismissed for this reason [among others]. *AMTRAK v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 . . . (2002)*.

(Defendants' Summary Judgment Memorandum at 24 (emphases in original).)

Defendants also argued that Bogle-Assegai could not present a prima facie case of prohibited discrimination, asserting, inter alia, that her fraudulent reporting of time worked had been the sole reason for her dismissal. (See id. at 25-31; see also Defendants' *Rule 56(a)*1 Statement of Facts P 97 ("Plaintiff was terminated for falsifying her time records and the theft of state time."); Plaintiff's *Rule 56(b)*1 Statement of Facts P 97 ("Admit.").)

Bogle-Assegai opposed defendants' motions to dismiss, arguing principally that she could present a prima facie case of discrimination. As to the motions of Appleton and Newton to dismiss the individual-capacity claims asserted against them, however, Bogle-Assegai admitted that those[*11] defendants had not been personally served and that they had not authorized anyone to accept personal service on their behalf (see Defendants' *Rule 56(a)*1 Statement of Facts PP 5, 7; Plaintiff's *Rule 56(B)*1 Statement of Facts PP 5, 7), and she did not offer any argument as to why the individual-capacity claims against them should not be dismissed for lack of service of process. Nor did Bogle-Assegai offer any argument as to why the State, CHRO, and the individual defendants in their official capacities did not have *Eleventh Amendment* immunity with respect to her *§§ 1981* and *1983* claims or her state-law claims as asserted in this action.

With respect to defendants' contention that her Title VII claims were time-barred, Bogle-Assegai argued as follows:

The defendants argue that the statute began to run on March 29, 2001, when Mrs. Bogle-Assegai was informed that she would be terminated. Mrs. Bogle-Assegai suggests that the court should not use the date that the defendant indicates she "would" be terminated; but rather the date that she was in fact terminated. Mrs. Bogle-Assegai was effectively terminated April 12, 2001. Further, the question whether a court may, for purposes[*12] of determining liability, review all such conduct, including those acts that occur outside the filing period, turns on the statutory requirement that a charge be filed within a certain number of days "after the alleged unlawful employment practice occurred." Because such a claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice," it does not matter that some of the component acts fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining

liability. *AMTRAK v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).*

(Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (" Bogle-Assegai Memorandum Opposing Summary Judgment") at 5-6.)

C. The Decision of the District Court

In a Ruling on Motion for Summary Judgment, dated March 10, 2005 ("District Court Opinion"), the district court granted defendants' motions and dismissed the complaint. The court first granted the motion to dismiss the claims asserted against[*13] Appleton and Newton in their individual capacities, noting that it was undisputed that process had been served on them only by service on the Office of the Attorney General. See District Court Opinion at 5, 7. The court held that, as those defendants had not authorized anyone to accept service of process for them in their individual capacities, service on a State office was insufficient to constitute personal service on them for claims against them in their individual capacities.

The district court next concluded that the *Eleventh Amendment* barred Bogle- Assegai's claims under *§§ 1981* and *1983* against the State, CHRO, and the individual defendants in their official capacities, holding that the State had not waived its sovereign immunity and that "Congress's enactment of *§ 1981* and *§ 1983* did not override the immunity that the states and their agencies enjoy under the *Eleventh Amendment.*" Id. at 9. The court ruled that the *Eleventh Amendment* also required the dismissal of Bogle-Assegai's state-law claims. The court noted that the State had "waived its immunity to suit in state court for CFE[P]A claims. But it has not clearly expressed a waiver to suit in federal court. [*14] " Id. (internal quotation marks omitted).

Finally, the district court concluded that Bogle-Assegai's Title VII claims were untimely. The court stated that Title VII requires a plaintiff to file an administrative complaint with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred," *42 U.S.C. § 2000e-5(e)*; and that a claim of discriminatory termination of employment "accrues on the date the termination decision is made and communicated to the employee," District Court Opinion at 10-11 (citing *Delaware State College v. Ricks, 449 U.S. at 258*). The court found that

[i]n this case, plaintiff received her formal notice of termination on March 29, 2001. . . . The termination notice stated that she was no longer authorized to report to work after March 29, 2001. . . . Her administrative charge was filed on October 1, 2001, 186 days following her formal notice of termination. . . . Plaintiff's contention that the limitations period begins to run as of the effective date of her termination, April 12, 2001, is unsupported by the case law.

District Court Opinion at 11.

The district[*15] court noted that "[u]nder certain circumstances, the [180-day] filing period is extended to three hundred (300) days," i.e., where "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from" the alleged "unlawful employment practice," id. at 10 n.7, but that "[h]ere, plaintiff only filed a claim with the EEOC; thus the 180 day limitations period applies," id. The court found that there was no evidence of a "continuing violation" that could extend the 180-day filing period.

Judgment was entered dismissing the complaint, and this appeal followed.

II. DISCUSSION

On appeal, Bogle-Assegai contends principally that the district court erred in dismissing her Title VII claims as time-barred, arguing that they were subject to the 300-day, rather than the 180-day, filing period. She also contends, inter alia, that the court should not have dismissed her claims against Appleton and Newton in their individual capacities but, at worst, should have given her an extension of time to effect personal service on them. We are unpersuaded.

A. The Filing Period Applicable to the Title VII Claims[*16]

Bogle-Assegai contends that the district court erred in dismissing her Title VII claims as untimely, arguing principally that the applicable period for the filing of her administrative charge, which she filed 186 days after she received the Termination Letter, was not 180 days but 300 days. She argues that the State has a work-sharing agreement with the EEOC, and that under such agreements the filing of an administrative charge with either the EEOC or the State agency (here CHRO) is deemed a filing with each agency--a dual filing--and is timely if made within 300 days. We reject this contention because it was not raised in the district court and because Bogle-Assegai has failed to present any reasonable ground for its consideration by this Court.

[HN1] "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the

first time on appeal." *Greene v. United States, 13 F.3d 577, 586 (2d Cir. 1994).* "However, because th[is] rule is prudential, not jurisdictional, we have discretion to consider waived arguments," *Sniado v. Bank Austria AG, 378 F.3d 210, 213 (2d Cir.),* vacated on other grounds, *542 U.S. 917, 124 S. Ct. 2870, 159 L. Ed. 2d 774 (2004),*[*17] and "[w]e have exercised this discretion where necessary to avoid a manifest injustice or where the argument presents a question of law and there is no need for additional factfinding," *Allianz Insurance Co. v. Lerner, 416 F.3d 109, 114 (2d Cir. 2005)* (internal quotation marks omitted). Nonetheless, the circumstances normally "do not militate in favor of an exercise of discretion to address . . . new arguments on appeal" where those arguments were "available to the [parties] below" and they "proffer no reason for their failure to raise the arguments below." *Id.*

It is clear that Bogle-Assegai did not make her present argument to the district court, although she had ample incentive to do so. Defendants' motion for summary judgment asserted that "there was no dual filing with both CHRO and EEOC (it was filed only with EEOC)," and thus that "plaintiff is not entitled to 300 days and her Title VII claim is untimely and must be dismissed . . . ." (Defendants' Summary Judgment Memorandum at 24 (emphases in original)). As described in Part I.B. above, Bogle-Assegai's response to this untimeliness contention made no reference to a work-sharing agreement, or[*18] to the concept of dual filing, or to any possibility that the applicable period was 300 days. Her memorandum argued only that defendants had used the wrong starting date for calculating the 180-day period and that the 180-day deadline had been met. (See Bogle-Assegai Memorandum Opposing Summary Judgment at 5 ("the court should not use the [March 29] date that the defendant indicates she 'would' be terminated; but rather the date that she was in fact . . . . effectively terminated[,] April 12").)

At oral argument of this appeal, we asked counsel to review the record and inform this Court whether Bogle-Assegai had in fact argued in the district court that the 300-day filing period applied to her claims. In response, Bogle-Assegai's counsel submitted a letter stating that "counsel for Plaintiff-Appellant has made a diligent search of the record below and finds that with regard to the 300-day filing rule, Plaintiff-Appellant did not specifically argue the 300-day rule." (Letter from Bogle-Assegai's attorney Josephine Smalls Miller to this Court dated April 28, 2006 ("Miller Letter").)

Bogle-Assegai's counsel argued, however, that the complaint's citation of *42 U.S.C. § 2000e-5*[*19], which "provides for the 180-day filing period and the 300-day filing period in deferral states . . . . was sufficient to raise the issue for all subsequent purposes." (Miller Letter.) We disagree. [HN2] The mere citation to a statute that provides alternative filing periods, the applicability of each turning on whether the EEOC has or does not have a work-sharing agreement with the state agency, does not constitute an assertion that there in fact existed such an agreement at the pertinent time and that the longer period applies. We see nothing in the record to indicate that Bogle-Assegai raised the issue of the existence of a work-sharing agreement before the district court or that she in any way suggested to that court that the filing period applicable to her was 300 days.

Bogle-Assegai urges us nonetheless to entertain her present 300-day contention, arguing that we should take judicial notice that the EEOC regularly enters into such work-sharing agreements, that the existence of such an agreement presents an issue that is purely legal, and that CHRO should not be allowed to deny the existence of a work-sharing agreement on which she relied. These arguments are meritless.

Bogle-Assegai's [*20] contention that "[t]his court may take judicial notice of the fact that the [EEOC] regularly enters into work-sharing agreements with state fair employment practices [sic]" ( Bogle-Assegai reply brief on appeal at 2 (emphasis added)) is not a sound basis for consideration of her new argument. Even if we were to take judicial notice of that practice in general, it would not ineluctably follow that there existed such an agreement between the EEOC and CHRO on October 1, 2001, in particular.

Further, despite Bogle-Assegai's assertion that "the issue is purely legal and there is no need for additional fact-finding" (id. at 1 (internal quotation marks omitted)), the question of whether there existed a work-sharing agreement between the EEOC and CHRO on October 1, 2001, is a question of fact, not a question of law. Defendants state that no such agreement was in effect on that date (see Defendants' brief on appeal at 9 n.2); and if Bogle-Assegai had proffered any evidence that such an agreement did in fact exist on that date, there plainly would be a need for factfinding.

Moreover, Bogle-Assegai has not given this Court any indication that she would be able to offer[*21] evidence that in fact such an agreement existed at the time she filed her administrative charge. Her brief repeatedly refers to and purports to quote "the work-sharing agreement" (emphasis added) between the EEOC and CHRO, as if the existence of such an agreement at the pertinent time were established (see, e.g., Bogle-Assegai brief on appeal at 15 ("In the instant case, the relevant portions of the work-sharing agreement between the EEOC and CHRO state[] . . . ."); see also id. at 17 n.2,

19, 29; Bogle-Assegai reply brief on appeal at 1, 3, 5). But not one of these quotes or references is accompanied by a citation to an agreement or to any evidence.

Bogle-Assegai calls our attention to the decision in *Lewis v. Connecticut Department of Corrections*, 355 F. Supp. 2d 607 (D. Conn. 2005) ("Lewis"), as an indication that there existed a work-sharing agreement between the EEOC and CHRO. That case does not, however, show that such an agreement existed at the time pertinent to Bogle-Assegai. The Lewis court noted that the work-sharing agreement that had been submitted to that court by that plaintiff stated:

Charges that are received[*22] by the [CHRO], whether in person or by mail, and jurisdictional with the EEOC and timely filed by the charging party or his/her representative will be automatically dual-filed with the EEOC and vice versa. . . .

FY 2001 EEOC/FEPA Worksharing Agreement Between Connecticut Commission on Human Rights and Opportunities and Equal Employment Opportunity Commission, Pl.'s Index of Evidence in Supp. of Objection to Summ. J. . . .

*355 F. Supp. 2d at 615 n.4* (emphasis omitted). As cited, however, the document quoted by the Lewis district court was a "FY 2001" work-sharing agreement, and regardless of whether "FY 2001" referred to the fiscal year of Connecticut or to that of the federal government, it did not encompass October 1, 2001, the date on which Bogle-Assegai's administrative charge was filed. Fiscal years of Connecticut end on June 30 of each calendar year, see *Conn. Gen. Stat. § 4-35* (2006); fiscal years of the United States end on September 30 of each calendar year, see Bill Heniff Jr., Cong. Research Serv., The Federal Fiscal Year 1 (2003), available at http://www.rules.house.gov/archives/crs_reports.htm; and [*23]"[e]ach fiscal year is identified by the calendar year in which it ends and commonly is referred to as 'FY.' For example, [federal] FY 2003 began October 1, 2002, and ends September 30, 2003," id. (emphasis added); see also Memorandum from the Comptroller of the State of Connecticut on Fiscal Year 2006 Year-End Instructions (2006), available at http://www.osc.state.ct.us/2006memos/fiscalyearend/fyei nstructions.htm (describing monies deposited prior to July 1, 2006 as "Fiscal Year 2006" receipts). Thus, the Connecticut FY 2001 ran from July 1, 2000, through June 30, 2001; the United States FY 2001 ran from October 1, 2000, through September 30, 2001; and whichever government's "FY 2001" was referred to in the title of the work-sharing agreement quoted in *Lewis*, that FY ended before the filing of Bogle-Assegai's administrative charge with the EEOC on October 1, 2001.

Finally, Bogle-Assegai's argument that "CHRO should not be permitted to work an injustice upon claimants, such as Plaintiff-Appellant, who relied upon the existent [sic] of the charge processing agreement" ( Bogle-Assegai reply brief on appeal at 4-5 (emphasis added)) fails for lack of any[*24] evidence whatever to support its factual premise. Bogle-Assegai, in filing her administrative charge 186 days after her receipt of the Termination Letter, cannot be found to have relied on the existence of a work-sharing agreement. Had she so relied, she would have argued the existence of such an agreement in the district court. Instead, she argued that the 180 days began to run on the effective date of termination rather than on the earlier date of notice of termination. And even after the district court granted summary judgment dismissing the Title VII claims, stating that "the 180 day limitations period applies," District Court Opinion at 10 n.7, Bogle-Assegai did not move for reargument on the ground that the applicable period was 300 days or that there was a work-sharing agreement. Bogle-Assegai did move in November 2005 to reopen the judgment pursuant to *Fed. R. Civ. P. 60(b)*, but she did so on entirely different grounds.

In sum, faced with a summary judgment motion expressly asserting that her charge had not been dually filed with the state agency and that the 300-day filing period therefore did not apply to her claims, Bogle-Assegai [*25] had every incentive and opportunity to contest that argument. She made no argument to the district court in opposition. And in arguing to this Court that the 300-day period is applicable, she has proffered no reason for her failure to make that argument in the district court and has pointed to no evidence that would support her factual premises. In the circumstances, appellate consideration of her unpreserved argument is unwarranted. We affirm the district court's dismissal of Bogle-Assegai's Title VII claims on the ground that her administrative charge was not timely filed.

B. The Dismissals for Improper Service of Process

Bogle-Assegai contends that the district court erred in dismissing her claims against Appleton and Newton in their individual capacities for improper service of process, arguing that those defendants had actual notice of her claims and did not show that the improper service caused them prejudice. She also contends that the district court should have given her additional time pursuant to *Fed. R. Civ. P. 4(m)* to effect service on them personally. Her contentions lack merit.

[HN3] *Rule 4(e) of the Federal Rules of Civil Procedure*[*26] states in pertinent part that

[u]nless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed . . . may be effected in any judicial district of the United States:

(1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or

(2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

*Fed. R. Civ. P. 4(e)*. In the present case, Bogle-Assegai conceded that Appleton and Newton had not been served personally and that they had not authorized anyone to accept personal service on their behalf. Hence Bogle-Assegai did not meet the requirements of *Rule 4(e)(2)* and would[*27] have been able to show that service was proper only if Connecticut law permitted service on a defendant in his or her individual capacity by serving the Attorney General.

[HN4] Connecticut law, however, provides that delivery to the Attorney General constitutes service on an individual state officer or employee "as" an officer or employee:

Service of civil process in any civil action or proceeding maintainable against . . . the state or . . . any officer, servant, agent or employee of the state or of any such institution, board, commission, department or administrative tribunal, as such, may be made by leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General or at his office in Hartford.

*Conn. Gen. Stat. § 52-64* (2005) (emphases added). This provision on its face does not authorize service through the Attorney General's office on an individual State employee in his or her individual capacity.

With respect to an individual who is an officer or employee of the State but is not sued as such, Connecticut law requires that service be made by "leaving [the summons and complaint] [*28] with the defendant[] or at his usual place of abode," *Conn. Gen. Stat. § 52-57(a)* (emphasis added). See, e.g., *Banerjee v. Roberts, 641 F. Supp. 1093, 1099 (D. Conn. 1986)* (service "through the Connecticut Attorney General" sufficed to serve the "defendants in their official capacities" but was "not" a "method[] authorized" for "serv[ing them] with process in their individual capacities"); cf. *Armstrong v. Sears, 33 F.3d 182, 186-87 (2d Cir. 1994)* ("in a Bivens case, personal service should be made upon the individual defendant in accordance with *Rule 4(e)* instead of upon that individual as a government officer in accordance with *Rule 4(i)(2)*" (emphasis in original)). Accordingly, service on Appleton and Newton was not properly effected on them in their individual capacities.

Bogle-Assegai contends, however, that the district court should simply have given her additional time pursuant to *Rule 4(m)* to effect service on Appleton and Newton personally. That Rule provides, in pertinent part, as follows:

[HN5] If service of the summons and complaint is not made upon a defendant within 120 days after[*29] the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

*Fed. R. Civ. P. 4(m)* (emphases added); see, e.g., *Romandette v. Weetabix Co., 807 F.2d 309, 311 (2d Cir. 1986)* ("By the explicit terms of *Rule 4(j)* [predecessor to the present *Rule 4(m)*, see *Fed. R. Civ. P. 4* Advisory Committee Note (1993)], the court can disregard a failure to meet the 120-day limit if the plaintiff can show 'good cause why such service was not made.'").

*Rule 4(m)* provides little relief for Bogle-Assegai. Appleton and Newton raised the matter of improper service in their amended answer to the complaint in July 2003, and they requested dismissal on that ground in September 2004. In response to the motion to dismiss, Bogle-Assegai conceded that those defendants had not been properly[*30] served in their individual capacities; but she offered no excuse whatever for the defective service. Further, despite having been informed that Appleton and Newton objected to the improper service at least as early as July 2003, and despite the continued pendency of the lawsuit until March 2005, Bogle-Assegai never attempted to remedy the defect by asking the district court to extend her time to effect personal

service. It is plain therefore that Bogle-Assegai did not make the showing of good cause that could have allowed the district court, in accordance with *Rule 4(m)*, to extend her time to effect proper service.

Although Bogle-Assegai (a) relies on Romandette v. Weetabix Co. for the proposition that defective service must be excused where the defendant has received actual notice and has shown no prejudice, and (b) suggests that she was not required to show good cause in order to be given an extension of time to make proper service, her reliance is misplaced and her suggestion is unsupported by any authority of this Court. In Romandette, in which process had been mailed to the defendant rather than served personally, Romandette was an incarcerated pro se litigant who[*31] was "entitled to rely on service by the U.S. Marshals," *807 F.2d at 311*. He had "timely requested that the Marshals effect personal service," and the Marshals Service "had indicated that it would personally serve" the defendant. *Id. at 310*. Clearly, "Romandette had done everything in his power to effect personal service through the Marshal[]s Service," and we concluded that he "plainly exhibited good cause," *id. at 311*. Bogle-Assegai has not called to our attention any case in which this Court has ruled that the good-cause requirement specified in *Rule 4(m)* may be disregarded, and we are aware of no such case.

In any event, Bogle-Assegai, who was neither a pro se litigant nor incarcerated, made no showing whatever as to any effort on her part to effect personal service on Appleton and Newton. And given that she also made no effort to show good cause for her failure and never requested an extension of time during the 600-odd days when the case was pending after she first learned of the Appleton/Newton objections to service, we hardly think an extension of the 120-day period, in lieu of dismissal, could have been an extension for[*32] "an appropriate period." Accordingly, we see no error or abuse of discretion in the district court's decision to dismiss.

C. Other Contentions

Bogle-Assegai makes other arguments in her brief on appeal that do not require extended discussion. She contends, inter alia, that the district court erred in dismissing her §§ *1981* and *1983* claims, arguing that they were "timely filed" ( Bogle-Assegai brief on appeal at 24) as they do not require pre-suit administrative proceedings and are governed by a three-year statute of limitations (see id. at 24-25). The district court did not, however, dismiss those claims on the ground that they were time-barred. The §§ *1981* and *1983* claims were dismissed on the ground that as to those claims the State, CHRO, and the individual defendants in their official capacities were entitled to *Eleventh Amendment* immunity. Bogle-Assegai has presented no argument disputing that immunity, either in the district court or on this appeal.

Bogle-Assegai also argues that the State, CHRO, and the individual defendants in their official capacities are not entitled to *Eleventh Amendment* immunity with respect to her claims under Title VII. However, the[*33] district court did not dismiss Bogle-Assegai's Title VII claims on the ground of *Eleventh Amendment* immunity but rather, as discussed in Parts I.C. and II.A. above, on the ground that Bogle-Assegai's filing of her administrative complaint with the EEOC was untimely.

Bogle-Assegai's arguments going to the merits of her claims of discriminatory and disparate treatment are moot in light of the dismissals on the grounds of improper service, sovereign immunity, and untimeliness.

Finally, we note that Bogle-Assegai's briefs on appeal do not challenge the dismissal of her state-law claims in any respect. Thus, the dismissal of those claims stands as well.

CONCLUSION

We have considered all of Bogle-Assegai's arguments on this appeal to the extent that they are properly before us, and we have found them to be without merit. The judgment of the district court is affirmed.